UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                              :
PONY PAL, LLC,                                :       05 Civ. 2355 (CSH)
                                              :
                      Plaintiff,              :
                                              :       MEMORANDUM OPINION
           -against-                          :       AND ORDER
                                              :
CLAIRE'S BOUTIQUES, INC.,                     :
                                              :
                      Defendant.              :
------------------------------------------------------------x

3/31/06

HAIGHT, Senior District Judge:

In this action, Plaintiff Pony Pal, LLC sues Defendant Claire's Boutiques, Inc. for breach of contract for failing to make royalty payments pursuant to a licensing agreement authorizing Defendant to manufacture and sell products covered by a certain patent owned by Plaintiff. Pending before the Court is Plaintiff's motion to strike Defendant's affirmative defense pursuant to Federal Rule of Civil Procedure 12(f) and to dismiss counterclaims for declaratory judgment pursuant to Federal Rule of Civil Procedure 12(b)(1) ("the Motion").[1] For the reasons that follow, the Motion is granted in part and denied in part.

---

[1] Also pending is Defendant's motion for leave to file a surreply memorandum in further opposition to the Motion. Plaintiff has not opposed this motion by Defendant, and I can see no reason to deny it. Therefore, Defendant's motion for leave to file a surreply memorandum is granted. This ruling necessitates no further submissions, however, as Defendant was considerate enough to attach a proposed surreply memorandum to its motion for leave to file same.
   In addition, several months after the filing of the motions addressed herein, Defendant filed a motion for summary judgment on the ground that the products sold by Defendant are not within the scope of Plaintiff's patent, and Plaintiff filed a cross-motion for partial summary judgment on the ground that the products are, in fact, within the scope of the patent. Those motions remain *sub judice*.

1

## BACKGROUND

According to Plaintiff, it is the owner, by assignment, of the entire right, title, and interest in a certain patent ("the Patent") which claims, *inter alia*, "an inventive, removable hair piece comprising an elastic loop suitable to surround and bind a pony tail of a user and a connection securing a first end of a length of hair strands to the elastic loop." Complaint ¶ 7. The Complaint further alleges that the parties entered into a licensing agreement ("the Agreement") which permitted Defendant to make and sell hair products within the scope of the Patent in exchange for the payment of royalties. *Id.* ¶ 8. The Agreement also purportedly called for the up-front payment of $10,000 from Defendant to Plaintiff in consideration for a release contained therein and in compensation for the sale of any product covered by the Patent prior to the date the Agreement was executed. *Id.* In addition, the Agreement specifies that, in the event Defendant fails to make the appropriate royalty payments, Plaintiff may sue to recover royalties due, but it may not, in certain specified circumstances, terminate the Agreement licensing Defendant's use.

According to Plaintiff, Defendant made the up-front payment of $10,000 (*id.* ¶ 9), but thereafter continued to sell products covered by the Patent without paying any royalties to Plaintiff (*id.* ¶ 10). As a result, Plaintiff filed suit against Defendant for breach of the Agreement, seeking payment of royalties allegedly owed to Plaintiff. *See id.* ¶¶ 17-20.

In its Answer, Defendant first argued that no royalties were owed under the Agreement because the products that Defendant sold after the Agreement was executed were not covered by the Patent claims. Defendant also asserted (1) an affirmative defense on the ground that the claims of the Patent are invalid; (2) a counterclaim for a declaratory judgment that the claims of

the Patent are invalid; and (3) a counterclaim for a declaratory judgment that Defendant's products do not infringe on any claims of the Patent.[2]

In response to the assertions of the Answer, Plaintiff filed the Motion, seeking to strike Defendant's affirmative defense of invalidity of patent claims and to dismiss Defendant's counterclaims for declaratory judgment.

## DISCUSSION

### I. Motion to Strike Defendant's Affirmative Defense of Invalidity

#### A. Rule 12(f) Standard

Rule 12(f) of the Federal Rules of Civil Procedure states, in part: "Upon motion made by a party . . . or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." In the case at bar, Plaintiff claims that the affirmative defense of invalidity should be stricken because it is insufficient as a matter of law.

#### B. Should Defendant's Affirmative Defense of Invalidity Be Stricken?

Defendant argues that, as the Agreement specifies that royalties will only be paid on "Licensed Products" (Agreement ¶ 7), and as the term "Licensed Products" is defined as "products that are covered by one or more *valid* claims of the [Patent rights]" (*id.* ¶ 1(b) (emphasis added)), under no circumstances would Defendant be obligated to pay royalties on

---

[2] To the best of the Court's knowledge, Defendant is currently licensed by the Agreement to sell products covered by the Patent, and thus could not be sued for infringement of the Patent at this time. Therefore, I assume that Defendant's second counterclaim is actually seeking a declaration that the products currently sold by Defendant are not covered by the claims of the Patent (and that, accordingly, no royalties would be due as a result of the sales of those products, now or in the future).

3

invalid claims, purely as a matter of state contract law. It is Defendant's position that the language of the Agreement means that Plaintiff is not entitled to receive royalty payments until Plaintiff has proved validity, presumably in a court of law or before some other competent tribunal.

However, as federal patent law, against which background the parties entered into the Agreement, provides a presumption of patent validity, *see* 35 U.S.C. § 282, it seems counterintuitive and needlessly litigious to construe the Agreement to require Plaintiff to prove validity of the claims of the Patent before Defendant would have any obligation to pay royalties under the Agreement. Given the presumption of patent validity, it is more reasonable to interpret the Agreement language, as Plaintiff does, to mean that Defendant would be obligated to pay royalties until a patent claim was determined to be invalid, or, at the very least, challenged by Defendant as invalid.[3] Although the parties could have been more specific, as Defendant points out, and actually defined "valid claim" as "an issued claim . . . which has not been ruled invalid by a court or administrative agency of competent jurisdiction from which all appeals have been exhausted," as in *Gen-Probe, Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1378 (Fed. Cir. 2004), I do not agree that the Agreement had to include that language in order to allow the Court to accept the more obvious meaning of the Agreement language: that Defendant, who is reaping the benefits of the licensing agreement by being able to exploit the presumptively valid patent without facing an infringement suit, would bear the obligation of challenging the validity of the patent if it indeed believed the patent to be invalid. Under this interpretation, the "valid claims" language means

---

[3] *See Studienglesellschaft Kohle m.b.H v. Shell Oil Co.*, 112 F.3d 1561, 1568 (Fed. Cir. 1997) and the discussion of that case in the text, *infra*.

4

that Defendant would be released from the obligation to continue paying royalties under the Agreement if and when a competent court ruled that the patent claims at issue were, in fact, invalid.

As a result, Defendant is precluded from using alleged invalidity to avoid royalty obligations for the time period prior to Defendant's notice to Plaintiff that Defendant believed the patent claims to be invalid, which was apparently first provided in Defendant's answer. See *Shell Oil*, 112 F.3d at 1568, where the court held that, in order for a licensee to avail himself of the doctrine embodied in *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969), *i.e.*, that a licensee is not estopped from challenging the validity of a patent, and to avoid liability for royalty payments on the basis of patent invalidity, the licensee must (1) cease making royalty payments, and (2) give notice to the patentee that the licensee contests the validity of the patent.

The Federal Circuit's rationale in *Shell Oil* was that a licensee who fails to challenge the validity of a patent benefits by retaining the protection of the license while depriving the public of the full and free use of the patented product by withholding a successful challenge to validity. Accordingly, such a licensee should not be allowed to avoid liability for royalties for any such time period on grounds of patent invalidity. *See Revson v. Claire's Stores, Inc.*, 120 F. Supp. 2d 322, 327 (S.D.N.Y. 2000) (licensee cannot avoid liability for royalty payments on the basis of patent invalidity for that period of time before licensee both ceased making royalty payments[4] and notified patentee that validity was contested) (citing both *Lear* and *Shell Oil*); *see also Advanced Card Tech., LLC. v. Versatile Card Tech., Inc.*, 410 F. Supp. 2d 158, 161 (S.D.N.Y.

---

[4] In the case at bar, Defendant never paid any royalties under the licensing agreement, after the initial payment for past use.

5

2006). ("[The licensee] is estopped to challenge the validity of the patents in suit because it has neither ceased payment of royalties nor notified plaintiff that the reason for cessation was the claimed invalidity of the patents.") (citing *Shell Oil*).[5]

The Complaint, however, speaks as of the date of filing: to the extent Plaintiff would seek, in this or another action, to recover royalties for time periods after the filing of the Answer in this case, Defendant would not be precluded from raising a defense of patent invalidity against such a claim. *See Revson*, 120 F. Supp. 2d at 327.

## II. Motion to Dismiss Defendant's Counterclaims for Declaratory Judgment

### A. Rule 12(b)(1) Standard

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a claim must be dismissed when the federal court "lacks jurisdiction over the subject matter." "When considering a motion to dismiss for lack of subject matter jurisdiction . . . , a court must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998) (citation omitted). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (citation omitted). It is the claimant who bears the burden of establishing the court's

---

[5] In *Advanced Card Technologies*, Judge McMahon stated with characteristic panache: "Of course, [*Shell Oil*] is a Federal Circuit opinion, and since this case does not 'arise under' the patent laws, it is not going to be heard on appeal by the Federal Circuit. It will be heard by the Second Circuit (if it goes to any Court of Appeals at all). I have not found any Second Circuit case adopting the [*Shell Oil*] exception, although as the [*Shell Oil*] court itself notes, several other Circuits, including the Third, Sixth, Ninth and Tenth, follow the same rule. [*Shell Oil*], *supra*, 112 F.3d at 1568. However, the Federal Circuit's primacy in matters pertaining to patent law is such that, in the absence of direct Second Circuit precedent on the point, it is appropriate to rely on [*Shell Oil*] and to apply it to this case." 410 F. Supp. 2d at 161. I entirely agree, and accordingly apply *Shell Oil* to the case at bar.

jurisdiction by a preponderance of the evidence. *See Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

## B. Should Defendant's Counterclaim for a Declaratory Judgment of Invalidity Be Dismissed?

Plaintiff asserts that the Court lacks jurisdiction to adjudicate Defendant's counterclaim because there exists no justiciable controversy under the Declaratory Judgment Act, 28 U.S.C. § 2201.[6] I disagree. Plaintiff cites *B.P. Chem. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993), for the proposition that, in patent cases, a declaratory judgment claimant must be faced with a "reasonable apprehension" of an infringement suit before a sufficient case or controversy exists to permit this Court to rule on the declaratory judgment claim. Plaintiff posits that, as the Agreement is the equivalent of a covenant not to sue for infringement, and as Plaintiff has agreed not to terminate the Agreement and sue for infringement even if Defendant breaches the Agreement by failing to pay royalties, Defendant can be under no reasonable apprehension of an infringement suit.

In support of this position, Plaintiff cites the recent cases of *Medimmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376 (Fed. Cir. 2005) and *Gen-Probe*, 359 F.3d at 1380-82, where the court found no apprehension of a lawsuit, and thus no case or controversy sufficient to permit adjudication under the Declaratory Judgment Act. In those cases, however, the licensees challenging validity continued to pay royalties and were in compliance with the licensing

---

[6] Even if there is an actual controversy, the Court may, in its discretion, decline to exercise jurisdiction. *See* 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.") (emphasis added).

7

agreements in all respects, and thus faced no threat of any sort of litigation from the patentee. *See Medimmune*, 409 F.3d at 1380-81 (where licensee continues to pay royalties and is in good standing under the licensing agreement, licensee "can have no reasonable apprehension of suit – indeed, it can have no apprehension of suit at all – because there is nothing for which [patentee] can sue [licensee]"); *Gen-Probe*, 359 F.3d at 1380 ("Gen-Probe did not cease paying royalties and materially breach its license agreement with Vysis; Vysis did not file a breach of contract action. In fact, Gen-Probe was a licensee in good standing that continued paying royalties throughout the declaratory judgment lawsuit.").

Those cases, however, can be distinguished from the case at bar, where Defendant has never paid any royalties after execution of the licensing agreement, and is alleged to be in breach of that agreement. While the Court agrees that, given the facts of the case, Defendant might be protected from an infringement suit by Plaintiff's promise (as stated in the Agreement) that Plaintiff will not terminate the Agreement and sue for infringement even if Plaintiff fails to pay royalties, Defendant has actually been sued by Plaintiff for breach of the Agreement. Although I concluded above that Defendant cannot use the patent invalidity defense to avoid liability for any royalties accrued before it notified Plaintiff that it contested validity, the validity of the Patent claims remains a real issue with real effects. Assuming without deciding that Defendant's sales of current products are, in fact, covered by the Patent claims,[7] then Defendant would be faced with a continuing risk of suit for royalties going forward, against which patent invalidity would be a defense.[8] By filing this action, Plaintiff has demonstrated its willingness to sue Defendant to

---

[7] *See* discussion in text, *infra* pages 9-10.

[8] *See* discussion in text, *supra* pages 5-6.

8

protect its interests, and the validity of the Patent may very well be placed at issue in further litigation between the parties. Defendant thus has a strong interest in having the Court determine the validity issue – "A party has a right to seek declaratory judgment where a reasonable apprehension exists that if it continues an activity it will be sued by another party." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D.N.Y. 1994); *see also Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."); *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) ("In order to decide whether to entertain an action for declaratory judgment, we have instructed district courts to ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."). Given the facts of this case, I conclude that an actual controversy exists regarding Defendant's counterclaim of invalidity sufficient to permit this Court to address the matter pursuant to the Declaratory Judgment Act. The Court will therefore exercise jurisdiction to hear the validity issue, and, accordingly, will not dismiss Defendant's counterclaim for a declaratory judgment of patent invalidity.

## C. Should Defendant's Counterclaim for a Declaratory Judgment of No Infringement Be Dismissed?

As mentioned, Defendant, in its Answer, seeks a declaratory judgment that "the products sold by [Defendant] do not infringe any claim of the [Patent]." Answer, Counterclaims, ¶¶ 9-10.

9

As mentioned in footnote 2, *supra*, to the best of my knowledge, the Agreement remains in effect, and thus Defendant is currently protected from being sued for infringement by Plaintiff's covenant not to sue. As a result, I construe Defendant's request as one for a declaration that the products sold by Defendant do not fall within the scope of the Patent claims, and that, therefore, Defendant is not in breach of the Agreement. Whether or not those products fall within the scope of the Patent claims is the central issue to be decided before Plaintiff would be entitled to an award of royalties; the issue is squarely before the Court, based on the Complaint and the denials in the Answer (*see* Answer ¶¶ 10-12, 16 (denying that the products sold by Defendant fall within the scope of the Patent)). As such, it is clearly part of the actual case or controversy before the Court. Accordingly, the issue of the coverage of the Patent claims is a proper subject for a declaratory judgment pursuant to the Declaratory Judgment Act, and the Court therefore declines to dismiss Defendant's counterclaim.

## CONCLUSION

For the foregoing reasons, (1) Plaintiff's motion to strike the affirmative defense of invalidity is granted, to the extent that Defendant is seeking to use invalidity to avoid liability for royalties which accrued for the time period prior to Defendant's filing of the Answer; (2) Plaintiff's motion to dismiss the counterclaim for a declaratory judgment of invalidity for lack of subject matter jurisdiction under the Declaratory Judgment Act is denied; and (3) Plaintiff's motion to dismiss the counterclaim for a declaratory judgment of non-infringement for lack of subject matter jurisdiction is denied.

It is SO ORDERED.

Dated: New York, New York
March 30, 2006

/s/ Charles S. Haight, Jr.
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE