UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PONY PAL, LLC,

Plaintiff,

-against-

CLAIRE'S BOUTIQUES, INC.,

Defendant.

05 Civ. 2355 (CSH)

MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

In this diversity action, Plaintiff Pony Pal, LLC ("Pony Pal") sues Defendant Claire's Boutiques, Inc. ("Claire's") for breach of contract for failing to make royalty payments pursuant to a licensing agreement authorizing Defendant to manufacture and sell products covered by Plaintiff's patent. Defendant has moved for summary judgment pursuant to Rule 56, Fed. R. Civ. Proc. Plaintiff resists that motion and cross-moves for partial summary judgment as to liability.[1] For the reasons that follow, Defendant's motion is denied and Plaintiff's motion is granted.

## BACKGROUND

The factual background giving rise to the present action was detailed in the Court's prior opinion in this action (reported at 2006 WL 846354 (S.D.N.Y. March 31, 2006), familiarity with

[1] Also pending is Plaintiff's motion for leave to file a surreply memorandum in further opposition to the Motion. Defendant has not opposed this motion by Plaintiff, and I can see no reason to deny it. Therefore, Plaintiff's motion for leave to file a surreply memorandum is granted. This ruling necessitates no further submissions, however, as Plaintiff was considerate enough to attach a proposed surreply memorandum to its motion for leave to file same.

which is assumed. Accordingly, I recount below only those facts pertinent to the resolution of the present motions.

Pony Pal is the owner, by assignment, of the right, title and interest in United States Patent No. 5,899,211 (the "'211 Patent"). Plaintiff's Memorandum, Ex. A. On September 1, 2004, Plaintiff and Defendant entered into a License Agreement (the "Agreement") authorizing Defendant to make and sell hair products covered by one or more claims of the '211 Patent in exchange for royalties. Complaint, Ex. B. Pursuant to the Agreement, Claire's paid $10,000 in exchange for a release of liability for sales of any product covered by the '211 Patent prior to execution of the Agreement. *Id.* Claire's contends that subsequent to the execution of the Agreement it has not sold any products covered by the claims of the '211 Patent, and thus it owes no royalties to Pony Pal under the Agreement. Defendant's Memorandum, at 2-3. Both parties agree that Defendant changed the construction of its product and has sold only the newly constructed products since entering into the Agreement. Pony Pal contends that these products (the "Accused Products"), sold after September 1, 2004 and represented by Exhibits C and D to the Complaint, are covered by the claims of the '211 Patent. Plaintiff's Memorandum, at 3. It is undisputed that, under the terms of the Agreement, Claire's would owe Pony Pal royalty fees if it sells products covered under the scope of the '211 Patent claims. Plaintiff's Memorandum, at 1; Defendant's Memorandum, at 1-2.

The Accused Products consist of an elastic loop and a length of braided hair strands. Moeri Decl. ¶ 6, Ex. B; Complaint, Exs. C & D. The length of hair strands is folded over the elastic loop roughly at the midpoint of the length of hair. The length of hair is then braided manually to secure it to the loop. Moeri Decl. ¶ 7, Ex. B; Complaint, Exs. C & D. Thus the

Accused Products each consist of an elastic loop with a length of braided hair strands attached to it, but with the remainder of the elastic loop free. Moeri Decl., Ex. B; Complaint, Exs. C & D.

*The '211 Patent*

Although Plaintiff claims that at least claims 1, 5, 8, and 9 of the '211 Patent cover the Accused Products, only claim 1 need be considered initially for purposes of these motions, as the remaining claims are dependent on claim 1. Claim 1 is an independent claim describing a removable hair piece consisting of an elastic loop capable of surrounding and binding a pony tail and a connection securing a length of hair to the loop. The full text provides:

> A removable hair piece comprising:
> A length of hair strands having a first end and a second end;
> an elastic loop which is stretchable, twistable, and foldable, having a diameter in a non-expanded state of on the order of 1" to 2" and a diameter of several inches in an expanded state so that it is sized and configured to surround and bind a pony tail in place;
> a connection securing the first end of the length of hair strands to a portion of the elastic loop so that the remainder of the elastic loop is free and available to surround and bind a pony tail.

Because the terms of the Agreement at issue are undisputed, the present motions turn on the construction of the '211 Patent, and whether the Accused Products fall under the literal scope of its claims.

**DISCUSSION**

**I. Standard of Review on Motion for Summary Judgment Pursuant to Rule 56**

A court shall grant a motion for summary judgment "if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Cattrett*, 477 U.S. 317 (1986). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If there is "any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party," then summary judgment should be denied. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

**II. Claim Construction**

Claim construction is a question of law, undertaken to determine what is covered by the claims of the patent. *See Cybor Corp. V. FAS Techs. Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998); *Markman v. Westview Instruments, Inc.* 52 F.3d 967, 979 (Fed. Cir 1995) en banc, aff'd 517 U.S. 370 (1996). A court should look first to the intrinsic evidence contained in the patent itself "including the claims, the specification and, if in evidence, the prosecution history." *Vitrionics Corp. v. Conceptronic Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). In that exercise, the court should "look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention," *Id.* The touchstone for discerning the usage of claim language is

the understanding of those terms among artisans of ordinary skill in the relevant art at the time of invention. *Metabolite Laboratories v. Laboratory Corporation of America Holdings*, 370 F.3d 1354, 1360 (Fed.Cir. 2004). "In the absence of an express intent to impart a novel meaning to the claim terms, the words are presumed to take on the ordinary and customary meanings attributed to them by those of ordinary skill in the art." *ACTV Inc. v. Walt Disney, Co.*, 346 F.3d 1082, 1088 (Fed.Cir. 2003). Claim construction can require "little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed.Cir. 2005) (citing *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed.Cir. 2001) (holding that the claims did "not require elaborate interpretation"). The surrounding words of the claim must be considered in order to determine the customary meaning of the terms at issue. *ACTV Inc. v. Walt Disney*, 346 F.3d at 1088.The patent specification should also be considered when construing a claim, in light of its objective to provide a full and precise description of the invention. *Phillips v. AWH Corp.,* 415 F.3d at 1315. In fact, the specification can be "the single best guide to the meaning of a disputed term." *Id.* Courts also look to the prosecution history for any representations of the scope of the claims by the patentee, while attempting to secure the patent. *Vitrionics*, 90 F.3d 1582.

There is only one term of the '211 Patent claims that is expressly in dispute. The parties disagree as to the meaning of the term "end" as used to describe elements of the length of hair that is connected to the invention's elastic loop. The language at issue in the first claim reads: "a connection securing the first end of the length of hair strands to a portion of the elastic loop." '211 Patent, col. 6, ll. 48-9. The term 'first end' in the above limitation refers back to an earlier limitation of claim 1 that describes the "hair piece comprising: a length of hair strands having a

first end and a second end." '211 Patent, col. 6, ll. 40-1. Defendant claims that "the 'first end' and 'second end' of the 'length of hair strands' must be the same as the collective ends of the hair strands themselves." Defendant's Memorandum at 5. Plaintiff contends that "the 'first end' recited in claim 1 be properly construed as the proximal end of a collection or bundle of hair strands and not as limited to end extremities of linear or unidirectional strands of hair." Plaintiff's Memorandum, at 6 (emphasis in original).

Neither party claims that this disputed language has a particular meaning to persons skilled in the art of designing artificial hair pieces. We turn, then, to the contextual clues in the claim itself. A requirement of claim 1 is that the hair piece consists of "a length of hair strands having a first end and a second end." In this language, the entire length of hair itself has two ends. There is no indication that the ends referred to are the specific ends of the particular, individual hair strands comprising the length of hair. It appears instead that one end of the *entire length of hair* is secured by a connection to a portion of the elastic loop.

Defendant relies for support of its interpretation almost exclusively on language in the specification. Defendant points to the Summary of the Invention which states that "[t]he apparatus comprises a length of artificial hair…having a plurality of individual hair strands. First ends of the strands are connected to a pony tail securing member…The opposite or distal ends of the strands can be free or can include a second securing member." '211 Patent, Col. 3, ll. 38-43. Claire's contends that "[t]hus, it is the ends of the strands that are attached to the pony tail securing member, not the middle of the strands as in a loop of doubled over hair." Defendant's Memorandum at 6. In Defendant's view, the specification emphasizes that the invention "consists of non-doubled over hair." It does so, according to Claire's, because it mentions the

"opposite or distal ends of the strands." Since there is no separation between the ends of the strands on the Accused Products, Claire's maintains that these ends cannot be deemed "opposite." But this simply begs the question, what "ends" is the specification referring to. It appears to the Court that the plain meaning of these words within the context of the claims and specification taken together is that one end of the length of hair is opposite to the other. The first end is attached to the elastic loop, the other hangs opposite to it (that is, distally from the elastic loop). The language of the claim, and indeed, the invention, are no more complicated than this. As the Federal Circuit has stated: "a patentee may choose to be his own lexicographer and use terms in a manner other than their ordinary meaning, *as long as* the special definition of the term is *clearly stated* in the patent specification or file history." *Vitrionics v. Conceptronic*, 90 F.3d at 1582 (emphasis added).

      Indeed, as Plaintiff emphasizes, the specification refers in multiple locations to a 'length' of hair, in the singular, again providing no support for the interpretation that one 'end' of the 'length' indicates the ends of each of the individual strands of hair. There are 14 separate instances in the specification referring to the "length" of hair strands, and not to individualized ends of strands. *See* Plaintiff's Memorandum at 7. These references in the specification reinforce the language of claim 1 itself, which comprises "a length…having a first end and a second end." It is the entire length of hair itself that has two ends, and not the ends of the individual hair strands. I construe 'end' in claim 1 to mean either extremity of the entire length of hair. The claim refers to the end that is proximal to the elastic loop as the 'first end' and the extremity of the length of hair that is distal to the elastic loop is described as the 'second end'.

Defendant attempts to overcome this plain meaning of the claim and specification language by pointing to the single instance in which the plural 'ends' is used in the Summary of the Invention. While the Summary of the Invention is "a pertinent place to shed light upon what the patentee has claimed," *Rexnord Corp. V. Laitram Corp.*, 274 F.3d 1336, 1345 (Fed. Cir. 2001), a statement in the Summary of Invention is not on its own determinative of the meaning of the terms of the claims. Defendant discusses several Federal Circuit opinions in support of its contention that "Courts that have found a statement limiting the invention in the Summary of the Invention have uniformly held that the statement limits the scope of the claims." Defendant's Reply Memorandum, at 4. The holdings in all the cases upon which Defendant relies, however, do not support Defendant's statement of the law. None of the cited cases depends, as Claire's does here, on a singular use of language appearing only in the Summary of the Invention to limit the scope of the claims. Instead each case reads the Summary of the Invention within the context of the patent as a whole, including claim language, specification, and prosecution history. Moreover, in each case the language relied upon in the Summary of the Invention is nowhere near the ambiguous statement that Claire's relies upon here. *See Genzyme Corp. v. Transkaryotic Therapies, Inc.*, 346 F.3d 1094 (Fed. Cir. 2003) ("Throughout the…specification, the applicant consistently uses the term 'integrated' to refer to a foreign gene inserted into a host cell chromosome"); *C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004) ("the patent unequivocally defines the claimed plug as having pleats"); *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340, 1348 (Fed. Cir. 2004) (where court examined the Abstract, Statement of the Invention, other parts of the specification, as well as the prosecution history in supporting defendant's construction of claim language, court stated that specification

"repeatedly and consistently describes the…claim inventions as communicating directly over a telephone line"); *Cytec Corp. v. Tripath Imaging, Inc.*, 2005 wl 3177877 (D.Mass. Nov. 28, 2005) (disputed term appears one hundred sixty-one times throughout the whole patent "either implicitly or explicitly" indicating the court's construction).

Because the language of claim 1 must be construed to require only that the length of hair strands be connected to the elastic loop with a second extremity distal to that loop, Defendant's Accused Products are covered by the literal scope of the '211 Patent. By the terms of the Agreement between Claire's and Pony Pal, Claire's is liable for breach of contract for failing to pay royalties for sale of products covered by the '211 Patent. Complaint, Ex. B ¶¶ 1(b), 7.

In the Court's prior decision in this suit, I held that Defendant is precluded from alleging patent invalidity as a means of avoiding royalty obligations for the time period prior to defendant's notice to plaintiff that it believed the patent claims to be invalid (first provided in defendant's answer) but that, "to the extent Plaintiff would seek, in this or another action, to recover royalties for time periods after the filing of the Answer in this case, Defendant would not be precluded from raising a defense of patent invalidity against such a claim." 2006 WL 846334, at *3. Thus this issue remains as to damages. In addition, I declined to dismiss Defendant's counterclaim for a declaratory judgment of patent invalidity. These issues remain before the Court.

## **CONCLUSION**

Based upon the foregoing, Defendant's motion for summary judgment is denied and Plaintiff's motion for partial summary judgment as to liability is granted.

A telephone conference with counsel will be scheduled to discuss the next steps to be taken in the case.

It is SO ORDERED.

Dated: New York, New York
October 2, 2006

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE